### SUMMERS v. UNITED STATES. *

(Circuit Court of Appeals, Fourth Circuit. February 27, 1926.)

No. 2422.

1. **Indictment and information �köⱻ110(3)—Indictment in words of statute for presenting false claim, with particulars as to transaction, held sufficient (Criminal Code, § 35, as amended by Act Oct. 23, 1918 [Comp. St. Ann. Supp. 1919, § 10199]).**

Indictment under Criminal Code, § 35, as amended by Act Oct. 23, 1918 (Comp. St. Ann. Supp. 1919, § 10199), as to presenting false claims against the government for payment, which, in addition to embodiment of the words of the statute, particularized the identical transaction by date, amount, and nature of transaction, with the place and names of the parties concerned in its performance, held sufficient.

2. **United States ⊃123—Indictment for presenting false claim for services held not bad in not stating why claim was fraudulent.**

Indictment for presenting false and fraudulent claim for services rendered government for payment held not fatally bad, for not setting out the particular ground on which the claim was charged to be fraudulent, namely, that the services had not been rendered.

3. **Criminal law ⊃1167(2)—Judgment will not be disturbed because one count was bad, where sentence was within limit of punishment to which defendant was subject under other count.**

Even if one of two counts on which defendant was convicted was bad, it is no ground for disturbing the judgment; the sentence being

*Certiorari denied 46 S. Ct. 632, 70 L. Ed. ——.

within the limit of punishment to which defendant was subject under the other.

4. **Indictment and information ⊃61—Indictment for presenting false claim to marshal for payment held not bad, in not alleging he had right to pay it.**

Indictment for presenting to marshal for payment false claim against government for services as clerk to district attorney is not bad, in not alleging marshal had right to pay it; the court taking judicial cognizance of the statute which devolved that duty on him.

5. **United States ⊃121—Inhibition against making false certificate for claim against government applies to private individual, as well as official (Criminal Code, § 35, as amended by Act Oct. 23, 1918 [Comp. St. Ann. Supp. 1919, § 10199]).**

The second clause of Criminal Code, § 35, as amended by Act Oct. 23, 1918 (Comp. St. Ann. Supp. 1919, § 10199), making it an offense for one to make a false certificate for purpose of obtaining payment of false claim against the government, applies to private citizen as well as an official.

6. **United States ⊃121—Making and presenting false certificate or claim is inhibited, whether by one on his own behalf or that of another (Criminal Code, § 35, as amended by Act Oct. 23, 1918 [Comp. St. Ann. Supp. 1919, § 10199]).**

Making and presentation of false certificate and of false claim against the government for purpose of obtaining payment, whether by one on his own behalf or for benefit of another, is equally within the inhibition of Criminal Code, § 35, as amended by Act Oct. 23, 1918 (Comp. St. Ann. Supp. 1919, § 10199).

7. **Criminal law ⊃737(2)—Proof of venue in district of trial held sufficient, on prosecution for causing presentation of false claim against United States.**

Evidence on prosecution for causing false claim against the United States to be presented for payment *held* sufficient to go to jury on venue being in the district where trial was had.

8. **United States ⊃123—Indictment for presenting false claim for payment and statement of claim in evidence held not to present a variance, notwithstanding mistake in footing.**

In view of rule of commercial transactions that sum of items charged, less deductions, shall be regarded as the true statement, and not the amount arrived at by incorrect addition or subtraction, *held*, there was no variance between indictment for presenting false claim against government, and statement of claim in evidence, especially in view of indictment calling attention to mistake.

9. **Criminal law ⊃889—Order discharging jury after verdict can be recalled for resubmission for error, where jury has not separated and is still in court's presence.**

Though the jury, after return of verdict, was discharged, yet, it not having separated, and as a body being still in the court's presence, order of discharge could be recalled, and the case resubmitted to the jury, after setting aside of first verdict for supposed error.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Charles A. Woods and George W. McClintic, Judges.

L. P. Summers was convicted of violation of Criminal Code, § 35, as amended, and he brings error. Affirmed.

H. E. Widener, of Abingdon, Va., B. F. Buchanan, of Marion, Va., and F. B. Hutton, of Abingdon, Va. (Beverly A. Davis, of Rocky Mount, Va., J. H. Chitwood, of Roanoke, Va., Buchanan & Buchanan, of Marion, Va., and Hutton & Hutton, of Abingdon, Va., on the brief), for plaintiff in error.

Joseph C. Shaffer, U. S. Atty., of Wytheville, Va., and C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va.

Before ROSE and PARKER, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge. L. P. Summers, the plaintiff in error, was tried in the District Court of the United States for the Western district of Virginia, at Roanoke, upon an indictment containing six counts charging him with violation of section 35 of the Penal Code, as amended by Act of Congress approved October 23, 1918 (Comp. St. Ann. Supp. 1919, § 10199). The result was a conviction upon counts 5 and 6 and an acquittal upon the other four counts. He was sentenced to confinement in the federal penitentiary at Atlanta, Ga., for a period of 15 months, which was well within the limit for which he might have been sentenced upon either of the counts upon which the conviction was had. Summers had served as United States attorney for the Western district of Virginia from June 6, 1922, until August 1, 1924, and the counts on which he was convicted related to a claim for personal services alleged to have been rendered by one Hattie Perkins as clerk to the said United States attorney for the month of May, 1924. Twelve assignments of error, some of which embrace numerous particularizing subdivisions, are presented in the record. In order to avoid repetition and unnecessarily prolonging this opinion these assignments may be grouped under the following comprehensive divisions: (1) Sufficiency of the indictment. (2) Proof of venue. (3) Variance. (4) Setting aside the verdict and discharge of the jury.

### 1. Sufficiency of the Indictment.

[1-6] Upon the call of the case, counsel for the accused seasonably interposed a demurrer to all the counts in the indictment. It is ad-mitted that each count in the indictment was set out substantially in the language of the statute. It is claimed, however, that there was no inducement showing where Hattie Perkins was clerk to the United States attorney; no charge that she was not entitled to the claim she received; no averment as to why the defendant approved the vouchers or made the certificates; no averment showing wherein the claim presented or certification was false; no allegation that the United States marshal had any right to pay the claims presented or certified; no allegation that the plaintiff in error was an official of the United States government; no allegation as to whom the claim was payable; that the vouchers were not sufficiently described; nor was there anything to show whether the indictment was brought under section 35 of the Criminal Code, or under the section referring to similar offenses by United States officials; and that, when read together as a whole, the indictment fails to state any offense against the United States.

The general rule applicable to cases of this nature is thus stated in Potter v. U. S., 15 S. Ct. 144, 146, 155 U. S. 438, at page 444 (39 L. Ed. 214): "The offense charged is a statutory one, and, while it is doubtless true that it is not always sufficient to use simply the language of the statute in describing such an offense (United States v. Carll, 105 U. S. 611 [26 L. Ed. 1135]), yet if such language is, according to the natural import of the words, fully descriptive of the offense, then ordinarily it is sufficient."

Where, as in the instant case, in addition to the embodiment of the words of the statute, the identical transaction is further particularized by the date, amount, and nature of the transaction, together with the place and names of the parties concerned in its performance, it is evident that only the ingenuity of able counsel would be able to discover any difficulty in determining the precise nature of the charge to be met. Frohwerk v. U. S., 39 S. Ct. 249, 249 U. S. 204, 63 L. Ed. 561; 3 Foster, Federal Practice, § 497, pp. 2637–2639. The fifth count, in addition to formal allegations, charges that the plaintiff in error unlawfully made and caused to be made and presented for payment and approval to the United States marshal for the Western district of Virginia, an officer in the civil service of the United States, a claim for personal services rendered by one Hattie Perkins as clerk to the United States attorney for the Western district of Virginia for the month of May, 1924, in the sum of $166.25, erroneously stated as $165.25, and that this

claim was made and presented by the plaintiff in error, knowing it to be false, fictitious, and fraudulent. While proper consideration of careful pleading might have suggested the propriety of setting out the particular ground upon which the claim was charged to be fraudulent, namely, because the services had not been rendered, it still appears that no bill of particulars was requested, and it would be straining technicalities to conclude that the plaintiff in error or his counsel had any lack of understanding of the precise charge to be met.

However, even if this count should be stricken, the verdict should not be disturbed, since the plaintiff in error was convicted also upon the sixth count, which was in all respects sufficient, and the sentence was entirely within the limit of punishment to which the plaintiff in error was subject under that count. There is no merit in the suggestion as to the absence of the allegation that the United States marshal was clothed with the right to pay the claim, since the court must take judicial cognizance of the statute which devolves that duty on him. This count is drawn under the second clause of the statute, which makes it an offense for any one, whether an official or private citizen, to make any certificate containing any fraudulent or fictitious statement for the purposes prohibited by the statute. It is the character of the certificate itself, and not the official or unofficial relation of the one who is responsible for its making and presentation, that forms the basis of guilt. This count is more explicit than the fifth count, in that it particularizes the fraudulent character of the claim as one for services which had not actually been rendered. The making and presentation of the false certificate and of the false claim, whether by one on his own behalf or for the benefit of another, are both within the inhibition of the statute. The demurrer was properly overruled.

### 2. Proof of Venue.

[7] A review of the record discloses abundant evidence to go to the jury upon the question of proof of venue. The United States marshal, to whom the claim was presented, in his testimony produced the voucher and envelope in which it reached him through the United States mails at his office in Roanoke, Va., in the district within which the offense was committed and in which the trial was had. The evidence further shows that the locus of the transaction upon which the false claim was based, as well as the place of the consummation of the crime, was in that district.

### 3. Variance.

[8] When the voucher in question was presented in evidence, it embraced the following items:

|  | Dollars | Cts. |
|---|---|---|
| For services rendered as clerk to U. S. attorney from May 1, 1924, to May 31, 1924, inclusive......... | 150 | 00 |
| At the rate of $1,800 per annum, less deduction for retirement 2½ per cent. ..................... | 3 | 75 |
| Remarks: Increase of Compensation D. of J.................... | 20 | 00 |
| Amount claimed ............. | 165 | 25 |

Unquestionably the itemized statement shows this to be a claim for $166.25, and not for $165.25, under the universally recognized rule of commercial transactions that the sum of the items charged, less deductions, shall be regarded as the true statement, and not the amount arrived at by an incorrect addition or subtraction. It will be observed, however, that the defendant was not only advised as to the true nature of the claim, but was also advised as to the incorrect amount shown in the statement, leaving no question as to what identical claim was referred to.

### 4. Setting Aside the Verdict and Discharge of the Jury.

[9] The precise point raised by the assignments of error as to this aspect of the case is that, after the jury had been discharged and its functions had ceased beyond recall, it was reassembled under the order of the court and returned the verdict upon which the sentence was finally pronounced. The following is a recapitulation of what actually occurred:

After the conclusion of the evidence and argument of counsel, the presiding judge completed his charge to the jury at the arrival of the hour for the noon recess. The jury was placed in charge of the marshal, who was instructed to serve them with lunch at the hotel, and thereupon a recess was taken until 2 o'clock. At that hour the jury was returned to the courtroom. The court thereupon, because of a suggestion from plaintiff in error's counsel, briefly explained that portion of his charge referred to. Thereupon the jury retired, and presently returned to the courtroom and rendered its verdict. The court then said: "Gentlemen of the jury, you are now discharged, but that does not mean that you are excused for the term, as you will not be finally discharged until you have finished with the business of Judge McDowell in the trial of other cases."

Plaintiff in error's counsel then moved to set aside the verdict and in arrest of judgment upon various grounds, one of which was the absence of the plaintiff in error from the courtroom when the additional charge of the judge was given at 2 o'clock. Thereupon the court stated that he was not aware of the absence of the accused when the additional charge was given, and that the matter had not then been called to his attention by counsel, but, since the prisoner had the right to be present at every stage of the proceedings, the inadvertence of the court and counsel in that respect could not save a reversal, and that he would set aside the verdict, have it annulled, and again charge the jury as he had already charged them, so that they could go back to their room and reconsider the verdict. Objection was then made that the jury had been discharged, to which the court replied that it did not think so, but, after some discussion, the court said:

"Gentlemen, I did say to this jury, I remember now, that they were discharged as to their duty here; but I find that the jury is still not dispersed, and organized and constituted, and it seems to me that I would be guilty of a very technical ruling. I hold that the jury was not discharged. They remained in their seats, have spoken to no one, and no one has spoken to them. The Circuit Court of Appeals, on that technical ground, can reverse that judgment because of my inadvertently instructing the jury in the absence of the defendant, and I am going to set aside the verdict, charge the jury again, and ask them to retire to their room, reconsider their case, and, if they choose, to change the verdict and acquit the defendant."

Whereupon, over objection of counsel, the court read to the jury the charge in question, and it retired to its room, and after a time returned to the courtroom with a verdict of guilty upon the fifth and sixth counts, and not guilty on the other counts. This was identical with the verdict previously returned.

It may be remarked, in passing, that it appears that the accused was present at the beginning of the case, testified in his own behalf during its progress, and presumably was present at all times, except when the portion of the charge in question was originally given. It does not appear that he was in custody, nor is any explanation given of his absence at that time. Being under indictment for a felony less than capital, if he were at liberty under bond, and not in custody, and during the progress of the trial voluntarily absented himself, this would have constituted a waiver of his right to be present. While formerly the courts were not altogether in harmony upon this point, it is now conclusively determined by the case of Diaz v. U. S., 32 S. Ct. 250, 223 U. S. 442, 56 L. Ed. 500, Ann. Cas. 1913C, 1138. However, the first verdict was set aside by the court, and the affirmance of the judgment is dependent entirely upon the validity of the second verdict.

The general rule is as stated in Abbott's Trial Brief, Criminal Causes, p. 730: "After a verdict has been rendered, and the jury, after being discharged, have separated, the jury cannot be recalled to amend their verdict. But the mere announcement of their discharge does not, before they have dispersed and mingled with the bystanders, preclude recalling them."

A discharge in such case may be effected without written or verbal order of the court. The duties of a jury ordinarily are presumed to be at an end when its verdict has been rendered, received, and published. If thereupon, with or without further positive direction of the court, it is allowed to disperse and mingle with the bystanders, with time and opportunity for discussion of the case, whether such discussion be had or not, the discharge of the jury becomes final, and its functions are at an end. Ordinarily, the effective discharge of a jury is evidenced by the announcement of that fact by the court, and it is perhaps not to be construed so much an order as a mere announcement of the fact by the court when it says to the jury, "You are discharged." It is not so much what is said in passing as what is actually done and acted upon that determines the question of discharge. Without specific announcement, a jury may tacitly be permitted to retire and mingle with the bystanders after rendering its verdict, and thereby become effectively and irrevocably discharged. On the other hand, it may remain undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others, and particularly where, as here, the very case upon which it has been impaneled is still under discussion by the court, without the intervention of any other business.

The case of Brister et al. v. State, 26 Ala. 132, is in point. There the verdict was received and read aloud in the absence of the defendants, and the jury was thereupon told by the court that they were discharged, and started out of the courtroom, but before they

left the bar it was discovered that the prisoners were not present. Whereupon the court informed the jury that they were not discharged, the papers were returned to them, and the prisoners brought into court. The jury then, over objection, returned a verdict of conviction, and this was sustained by the Supreme Court. To the same effect is the case of Levells v. State, 32 Ark. 585, in which it was held that where the jury has not separated, and as a body is still in the presence of the court, the order of discharge is still in the breast of the court, and may be recalled. See also Jackson v. State, 45 Ga. 198; Grant v. State, 14 So. 757, 33 Fla. 291, 23 L. R. A. 723, and note at page 732; Taggart v. Com., 46 S. W. 674, 104 Ky. 301, 20 Ky. Law Rep. 493; Denham v. Com., 84 S. W. 538, 119 Ky. 508, 27 Ky. Law Rep. 171.

We have not discussed the motion to set aside the verdict and grant a new trial, since the determination of that question is dependent upon the issues already discussed and decided.

Affirmed.