[No. 1874-2.    Division Two.    July 21, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSE JAMES EDWARDS, *Appellant.*

*Richard T. Vlosich,* for appellant.

*Donald Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

REED, J.—Defendant Jesse James Edwards appeals from a Pierce County Superior Court conviction of sodomy, and the sole issue presented is whether a jury verdict was improperly received and entered by the trial court after a mistrial had been declared and the jury discharged. We hold it was not and affirm.

Defendant was charged with both forcible rape and oral sodomy on the same female victim. The case was submitted to the jury at 3:25 p.m. and at 6:47 p.m. word was received the jury could not agree and the trial judge had it returned to open court. Utilizing Washington Pattern Jury Instruction 6.14, 6 Wash. Prac. 60 (1967), the judge inquired of the foreman if there was a possibility the jury could reach an agreement within a reasonable time. This interrogatory was not couched in terms of each separate count. Upon receiving a negative answer, the court stated:

> The court will declare a mistrial, gentlemen. Mr. Connelly and Mr. Vlosich, I will request that you note the trial of this matter and this cause for retrial immediately, gentlemen.

The jury thereupon filed from the courtroom into the adjacent jury room, the bailiff following immediately behind and, within a minute or two thereafter, the bailiff notified court and counsel the jury had apparently reached a verdict on one count and the jury was again returned to the courtroom, where the following occurred:

THE COURT: Ladies and gentlemen, I was under the mistaken impression that you were unable to reach a verdict on either count.

Mr. Tardiff [bailiff], I am now advised they have reached a verdict on one count:

MR. TARDIFF: Yes, Your Honor.

The jury then handed up its verdict of guilty of sodomy, the trial judge polled the jurors, they were excused, and the court was adjourned. The following day, with counsel present, the trial judge placed the bailiff under oath and the following testimony was taken:

THE COURT: I am going to make a record. Mr. Tardiff, I am going to put you under oath, if I may sir.

Mr. Tardiff, would you state, for the record, starting when you first heard the knock from the jury room, what transpired?

MR. TARDIFF: I opened the door and the foreman said, "We are unable to reach a verdict."

THE COURT: Those were his words?

MR. TARDIFF : Those were his words.

THE COURT: Did he mention either count at all?

MR. TARDIFF: No, he didn't mention that. He said they were unable to reach a verdict and there was no use of staying any longer, they were unable to reach a verdict.

THE COURT: What did you do then?

MR. TARDIFF: I called the Judge. I called the two attorneys and waited until they got here.

THE COURT: The jury never left the jury room?

MR. TARDIFF: They never left the jury room. The outside door was locked.

. . .

THE COURT: Now, Mr. Tardiff, I want you to tell me exactly what happened after that.

MR. TARDIFF: You mean after the jury—

THE COURT: When I declared a mistrial and I left the bench.

. . .

MR. TARDIFF: Right after that I walked in the jury room and I was about ready to unlock the outside door and the foreman, Mr. O'Leary, said, "Just a minute, I want to talk to the bailiff." So I turned right around and he said, "We have one count against him. Does that make any difference?" And I said, "Yes." And I rushed out here and Mr. Connelly was just going out the door and so I stopped him and I rushed over and got the Sheriff and stopped him and then I rushed out and told you, Your Honor. But they didn't leave the jury room. They couldn't because I had the key and the outside door was locked.

THE COURT: Did you bring the jury back in?

MR. TARDIFF: I brought the jury back in and when you came out the jury was in the jury box.

THE COURT: . . .

Mr. Tardiff, is there any way possibly anybody could have reached that jury?

MR. TARDIFF: No way, no way.

THE COURT: Or communicated with them in any way?

MR. TARDIFF: No way. Just myself.

Defendant maintains we must strictly construe RCW 4.44.340, which provides:

In all cases where a jury are discharged or prevented from giving a verdict, by reason of accident or other cause, during the progress of the trial or after the cause is submitted to them, the action shall thereafter be for trial anew.

Defendant argues the statute should be literally applied and, since the jury was in effect discharged, the action must be tried anew. We disagree. The State correctly points out the judge did not actually pronounce the jury "discharged" but agrees there is no magic in the word, and that a discharge of the jury may be effected without formal pronouncement of the court. A discharge will occur in fact when a jury is permitted to pass from the sterility of the court's control and allowed to separate or disperse and mingle with outsiders. In such cases, contamination is pre-

sumed even though the jurors may not have taken advantage of the opportunity to discuss the case. *Cf. Summers v. United States*, 11 F.2d 583 (4th Cir. 1926); 5 R. Anderson, *Wharton's Criminal Law and Procedure* § 2149 (13th ed. 1957).

On the other hand, a trial judge's verbal discharge of the jury after receiving its verdict in a criminal case, does not preclude a later correction of the verdict to conform to the actual finding where the jury has not separated or dispersed, but has remained sequestered and insulated from any outside influence and the correction is not one of substance resulting from further deliberation on the merits of the cause. *Cf. Beglinger v. Shield*, 164 Wash. 147, 2 P.2d 681 (1931); *State v. Badda*, 68 Wn.2d 50, 411 P.2d 411 (1966); *Commonwealth v. Brown*, ............ Mass. ............, 323 N.E.2d 902 (1975).

In *Commonwealth v. Brown, supra*, jury verdicts were returned, recorded, and the jury discharged and allowed to retire. While on the way to the jury room the foreman indicated to a court officer there was something wrong with the verdict, and the jury was promptly returned to the courtroom where it was allowed to correct its verdict from not guilty of murder in the first degree to guilty. No more than 4 minutes elapsed from the time the jury was discharged until they returned to the court. An evidentiary hearing revealed its members had not commingled with the general public and there had been no further discussion of the matter among the jurors or with the alternate jurors who had preceded them on the way to the jury room. *See also West v. State*, 170 Tex. Crim. 317, 340 S.W.2d 813 (1960); 76 Am. Jur. 2d *Trial* § 1215 (1975).

In the instant case the jury did not pass from the control of the court but merely exited the courtroom to the adjacent jury room where it would have to remain until the bailiff entered and unlocked the outside door. No member of the jury had either the time or opportunity to separate from his fellows and commingle with nonmembers of the jury, nor did the jurors renew their deliberations or discuss

852

the merits of the cause. The only words spoken were those of the foreman to the bailiff indicating they had, in fact, reached a verdict on one count, but had been unable to agree on the other.

Accordingly, the corrected verdict was properly received and the conviction is affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied September 7, 1976.

Review denied by Supreme Court February 7, 1977.