**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2597

_____

UNITED STATES OF AMERICA

v.

CARLOS FIGUEROA
a/k/a JOSE CURZ,
a/k/a CARLOS RIVERA,
a/k/a CARLOS FIGUEROA

Carlos Figueroa, Appellant

_____

On Appeal from the United States District Court
for the District of Eastern Pennsylvania
(D.C. Criminal No. 2-08-cr-00038-001)
District Judge: Honorable Mary A. McLaughlin

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 19, 2012

Before: AMBRO, VANASKIE and VAN ANTWERPEN,
Circuit Judges

(Filed: June 26, 2012)

Paul M. George
McKinney & George
239 South Camac Street
Philadelphia, PA 19107,
        *Counsel for Appellant*

Zane David Memeger
Robert A. Zauzmer
Emily McKillip
Floyd J. Miller
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

————

OPINION OF THE COURT

————

VAN ANTWERPEN, Circuit Judge.

      Carlos Figueroa was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (e). He appeals, arguing procedural errors regarding the bifurcated nature of the trial and temporary discharge of the jury violated his rights under the Double Jeopardy and Due Process Clauses. We will affirm.

# I.

On December 14, 2006, Figueroa sold four small packets of heroin to Brian Myers, an undercover Philadelphia Police Department ("PPD") officer. Myers returned later the same day and made a second purchase of four packets; two contained cocaine and two contained heroin. Figueroa admitted at trial that he had sold the drugs to Myers.

During the second purchase, Myers saw "what appeared to be" a gun tucked into Figueroa's waistband. Myers admitted that it was dark when he made this observation, and that he only saw a few inches of the object. He was not sure, therefore, that it was actually a gun. Soon after this second sale, PPD officers stopped the car driven, and owned, by Figueroa's girlfriend, Jennifer Sawyer. Figueroa was seated in the front passenger's seat. Officers removed both occupants from the car; one officer opened the glove compartment and recovered a handgun. Both Sawyer and Figueroa denied owning, or even knowing of, the firearm. No forensic evidence connected either individual to the firearm.

A grand jury indicted Figueroa on January 22, 2008. The grand jury charged him with one count of distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One), one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two), one count of carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count Three), and one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Four).

Figueroa's trial started on December 14, 2009. Count Four was bifurcated from the other counts. Figueroa admitted that he sold the drugs and was guilty of Counts One and Two. He denied, however, possessing either the firearm Myers observed on his person or the firearm discovered in the glove compartment. On December 16, the jury began deliberations on Counts One, Two, and Three. Deliberations began at 3:10 p.m., and at 4:50 p.m. the jury sent a note[1] that said: "We are split regarding his actual possession of weapon during the exchange."[2] At 6:00 p.m. another note was received that said: "Do not believe we're going to be able to reach a unanimous decision on the third charge."

---

[1] The language of the notes is quoted according to Judge McLaughlin's on-the-record statements.

[2] During trial, the government prosecuted Count Three on an actual possession theory, based on Officer Myers' testimony that he observed a firearm in Figueroa's waistband. It did not try to connect the firearm in the glove compartment to Count Three because Figueroa's possession of the firearm, while in the car, was irrelevant to the charge under 18 U.S.C. § 924(c)(1)(A). Under § 924(c)(1)(A) the firearm must have been used or carried in relation to the drug trafficking crime or possessed in furtherance of the drug trafficking crime. The government did not argue either prong was met on the facts of this case. The firearm in the glove compartment was relevant, however, to whether Figueroa violated the prohibition in 18 U.S.C. § 922(g)(1) on convicted felons possessing a firearm that has travelled through interstate commerce. To that end, the prosecuting attorney wanted to argue constructive possession of the firearm in the glove compartment in the part of the trial pertaining to Count Four.

The jury was reconvened the following day.  At 1:48 p.m. the jury again sent a note, stating "Your Honor, we will not be able to reach a verdict on the gun charge."  Defense counsel felt the jury should continue to deliberate, but Judge McLaughlin stated that it would be coercive given the notes received and time already spent deliberating.  The prosecutor believed the jury's verdict should be received at that time.

Judge McLaughlin then asked the prosecutor "what should we do with Count [Four], if indeed I do declare a mistrial on Count [Three], Mr. Miller?"  The prosecutor responded that the court should proceed with the bifurcated portion of the trial.  Defense counsel opposed this position, and argued that giving the jury Count Four would put the jury "back in the same situation they are right now."  Judge McLaughlin agreed, and stated that it "would be coercive" to give them another charge after they could not decide the possession element of Count Three.

Next, Judge McLaughlin brought the jury into the courtroom.  The foreperson stated that the jury had reached verdicts as to Counts One and Two.  Judge McLaughlin asked the foreperson whether it had reached a unanimous verdict as to Count Three.  The foreperson replied that it had not.  Judge McLaughlin inquired whether it would be able to reach such a verdict with more time, and the members of the jury indicated they would not reach a unanimous verdict.  Judge McLaughlin then published the verdicts.  The jury found Figueroa guilty on Counts One and Two.  Judge McLaughlin thanked the jury members for their service and released them. Immediately upon their exit, the chief of the firearms section of the U.S. Attorney's Office, Francis Barbieri, presented himself to the court and asked that the jury be held so Count

5

Four could be further discussed. Judge McLaughlin immediately sent a court employee to hold the jury.

Barbieri stated that a finding of "manifest necessity" was required to properly declare a mistrial. Barbieri explained that although such a finding was appropriate as to Count Three due to the jury's inability to reach a verdict, it would not be appropriate as to Count Four if the jury was never presented with the Count and instructed as to its elements. Judge McLaughlin stated that, "obviously when I made the finding that I did, I assumed there would be a retrial on Counts [Three] and [Four]." Given the government's concern, Judge McLaughlin left the bench and researched the issue. When she returned, she concluded that she would bring the jury back into the courtroom to consider Count Four.

Figueroa's defense counsel did not object at any point to these events. Judge McLaughlin brought the jury back and rescinded her prior dismissal. The evidence regarding Count Four was set forth. Two of the three elements of Count Four were stipulated: that Figueroa had a prior conviction and that the firearm had traveled in interstate commerce. The attorneys then made short closing arguments as to the third element, possession. Judge McLaughlin charged the jury on Count Four, and it returned a verdict of guilty. Figueroa was sentenced to 180 months, the statutory minimum for Count Four.

## II.

### A.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's actions for plain error because Figueroa did not object below. To demonstrate plain error an appellant must show: "(1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was 'plain,' i.e., clear or obvious, and (3) that the error affected his substantial rights." *United States v. Corso*, 549 F.3d 921, 928 (3d Cir. 2008).

**B.**

Figueroa contends that his rights under the Double Jeopardy and Due Process Clauses of the Fifth Amendment were violated. Never before, he argues, has a judge asked for the opinions of both parties regarding dismissing a jury, reached a decision on the record regarding the issue, proceeded to dismiss the jury, and then reconvened the same jury and presented it with new evidence regarding an additional criminal charge. After reviewing the record and relevant case law, we conclude that the District Court did not commit error, let alone plain error, when it brought the jury back into the courtroom and instructed it to decide Count Four.

The discharge or release of jurors can be problematic because, upon release, they become susceptible to outside influences. The "protective shield" imposed by a court throughout the proceeding aims to prevent jurors from being influenced by outside factors. *See People v. McNeeley*, 575 N.E.2d 926, 929 (Ill. App. Ct. 1991) (describing a court's efforts at preventing jurors from being influenced by improper outside factors as a "protective shield"). Judges

7

reiterate this concern time and again to jurors. When the jurors are discharged after their decision, the concern regarding outside influences ends. Because the proceedings and the jury's deliberation process can no longer be affected, often, as happened here, the jurors are instructed that they may discuss the case with the parties or other individuals. *See United States v. Marinari*, 32 F.3d 1209, 1214 (7th Cir. 1994) ("Of course, after discharge, the jurors are quite properly free to discuss the case with whomever they choose.").

In cases such as Figueroa's, the pivotal inquiry is whether the jurors became susceptible to outside influences. "When a jury remains as an undispersed unit within the control of the court and with no opportunity to mingle with or discuss the case with others, it is undischarged and may be recalled." *Marinari*, 32 F.3d at 1213 (citing *Summers v. United States*, 11 F.2d 583 (4th Cir. 1926)); *see also United States v. Rojas*, 617 F.3d 669, 678 (2d Cir. 2010) ("It is significant that, although the jury had technically been declared 'discharged' by the court, it had not dispersed."). As the Fourth Circuit long ago stated, "the mere announcement of [the jury's] discharge does not, before they have dispersed and mingled with the bystanders, preclude recalling them." *Summers*, 11 F.2d at 586 (citing AUSTIN ABBOTT, A BRIEF FOR THE TRIAL OF CRIMINAL CASES 730 (2d ed. 1902)).

In this case, the jury returned its verdict as to Counts One and Two, and notified the District Court that it could not reach a verdict as to Count Three. The District Court below retained control of the jury at all times after it informed the jurors they were released. The jurors did not disperse and interact with any outside individuals, ideas, or coverage of the

8

proceedings. Thus the fact that the jury was momentarily released did not subject them to outside influence. Accordingly, the District Court did not err by reconvening the jury for Count Four.

**C.**

We now turn to Figueroa's Double Jeopardy claim. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187 (1957). If a mistrial is properly declared it does not prevent reprosecution. *See Richardson v. United States*, 468 U.S. 317, 325 (1984) ("[W]e reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected."). "The power to declare a mistrial 'ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *United States v. Rivera*, 384 F.3d 49, 55 (3d Cir. 2004) (citing *United States v. Perez*, 22 U.S. 579, 580 (1824)). "Only where the mistrial is required by 'manifest necessity' will reprosecution be permitted under the Double Jeopardy Clause." *Id*.

Here, a mistrial was properly declared regarding Count Three.[3] But, as the government noted, the record was not

---

[3] The declaration of a mistrial does not prevent the government from reprosecuting the charge. *Richardson*, 468 U.S. at 325 ("[W]e reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was

clear as to the "manifest necessity" of declaring a mistrial regarding Count Four. Judge McLaughlin decided that it may have been improper to declare a mistrial on Count Four without having any jury deliberations from which "manifest necessity" could be demonstrated. Figueroa's counsel did not object to her conclusion. None of the protections afforded by the Double Jeopardy Clause was implicated by the District Court's decision to bring the jury back into the courtroom to consider a charge that had not previously been presented to them.[4] If anything, this action was required to avoid prejudicing the government on Count Four. *See Richardson*, 468 U.S. at 326 ("The Government, like the defendant, is entitled to resolution of the case by verdict from the jury . . . ."). For these reasons we determine that the District Court did not violate Figueroa's rights under the Double Jeopardy Clause.

**III.**

subjected."). Figueroa could have been retried on Count Three given the appropriate "manifest necessity" finding made by the District Court. *See id*. at 323–24 ("It has been established for 160 years, since the opinion of Justice Story in *United States v. Perez*, that a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.'" (quoting *Perez*, 22 U.S. 579, 580 (1824))).

[4] The bifurcated nature of the trial created a situation where the jury was not even aware of Count Four.

For the foregoing reasons, we will affirm Figueroa's conviction.