# ADRIAN BENJAMIN, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2012-0026
Supreme Court of the Virgin Islands
September 6, 2013

VANESSA-NOLA PRATT, ESQ., The V-Law Group, PLLC, Washington, D.C., *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (September 6, 2013)

CABRET, *Associate Justice*. Adrian Benjamin appeals his convictions for second-degree murder, four counts of third-degree assault, reckless endangerment, and unauthorized possession of a firearm. He argues that his convictions should be reversed because the Superior Court erred in declaring a mistrial, discharging the jury, and then recalling the jurors to return a verdict. We hold that the Superior Court did not err in recalling the jury in this instance and affirm Benjamin's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2009, a number of shootings occurred in the Mutual Homes Apartments and neighboring Lorraine Village Apartments on St. Croix. During the shootings, George Simpson was shot and killed and a

number of others were injured, including a minor identified as R.M., Ismael Jeffers, Jamal Francis, and Julian Brown.

On February 13, 2009, the People filed an Information against Adrian Benjamin and several co-defendants for their roles in the shooting.[1] The three-week trial began on January 31, 2011. On February 18, 2011, the court delivered its final instructions and the jury began its deliberations. On February 23, 2011, at 2:35 p.m., the jury indicated that it was unable to agree on a verdict for one of the defendants. The court delivered an *Allen* charge[2] and the jury resumed deliberations until 6:31 p.m. that evening, when the jurors sent a note to the court reporting that they had reached a verdict. The jury found Benjamin's co-defendants not guilty on all charges, but the foreperson indicated that the jury was deadlocked on all charges against Benjamin, and the court immediately declared a mistrial, thanked the jurors for their service, and discharged them at 6:40 p.m.

Immediately after the jury was discharged, the People asked the court to review the verdict form because "the jury note . . . suggested that there was a decision on . . . Benjamin on some of the counts." (J.A. 142.) Benjamin objected, arguing that "the jury's been discharged. It's over." (J.A. 143.) After this exchange, the court was informed that the foreperson "advised the marshal she did not understand the last question and would like to clarify something." (J.A. 143.) Benjamin again objected, asserting that the jury had been discharged and the trial was over. Over Benjamin's objection, the court stated that it felt "compelled

---

[1] Before trial the People filed a Superseding Information charging Benjamin and his co-defendants with: Count I, first-degree murder of George Simpson in violation of 14 V.I.C. §§ 922(a)(1) and 923(a); Count II, attempted first-degree murder of R.M. in violation of 14 V.I.C. §§ 11(a), 331(1), 922(a)(1), and 923(a); Count III, attempted first-degree murder of Ismael Jeffers in violation 14 V.I.C. §§ 11(a), 331(1), 922(a)(1), and 923(a); Count IV, attempted first-degree murder of Julian Brown in violation 14 V.I.C. §§ 11(a), 331(1), 922(a)(1), 923(a); Count V, attempted first-degree murder of Jamal Francis in violation 14 V.I.C. §§ 11(a), 331(1), 922(a)(1), 923(a); Count VI, third-degree assault of R.M. with a deadly weapon in violation of 14 V.I.C. §§ 11(a) and 297(2); Count VII, third-degree assault of Ismael Jeffers with a deadly weapon in violation of 14 V.I.C. §§ 11(a) and 297(2); Count VIII, third-degree assault of Julian Brown with a deadly weapon in violation 14 V.I.C. §§ 11(a) and 297(2); Count IX, third-degree assault of Jamal Francis with a deadly weapon in violation of 14 V.I.C. §§ 11(a) and 297(2); Count X, reckless endangerment in violation 14 V.I.C. §§ 11(a) and 625(a).

[2] *See Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896) (approving a set of instructions given to deadlocked juries).

to . . . permit the jurors to clarify their statement to the [c]ourt" and recalled the jurors to the courtroom. (J.A. 145.) Once the jurors had returned to the jury box, the court again asked if they had come to a verdict on any of the charges against Benjamin. The foreperson responded that the jury had unanimously found Benjamin not guilty of first-degree murder and the four counts of attempted first-degree murder, but had found Benjamin guilty of reckless endangerment and unauthorized possession of a firearm. The court then polled the jury, and each juror affirmed that the verdict reflected their independent judgment. The court again discharged the jury at 6:50 p.m. Finally, the court rescinded its mistrial order on the charges for which the jury announced a verdict, and declared a mistrial on the lesser-included charge of second-degree murder and the four counts of third-degree assault.

The People filed a Third Redacted Superseding Information against Benjamin on June 3, 2011, charging him with one count of second-degree murder and four counts of third-degree assault. The second trial began on June 6, 2011. Following trial, the jury found Benjamin guilty of second-degree murder and the four third-degree assault charges. The court sentenced Benjamin to sixty years imprisonment for second-degree murder, five years for the third-degree assault of R.M., five years for the third-degree assault of Ismael Jeffers, five years for the third-degree assault of Julian Brown, five years for the third-degree assault of Jamal Francis, five years for reckless endangerment, and twenty years for the unauthorized possession of a firearm, to run consecutively, as well as a $25,000 fine and court costs. The Superior Court memorialized the sentence in a March 14, 2012 Judgment and Commitment.

## II. JURISDICTION

We have jurisdiction over this criminal appeal pursuant to V.I. CODE ANN. tit. 4, § 32(a), which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The Superior Court's March 14, 2012 Judgment and Commitment is a final order, and Benjamin filed a timely notice of appeal on March 9, 2012.[3]

---

[3] Supreme Court Rule 5(b)(1) provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as

*Prince v. People*, 57 V.I. 399, 404 (V.I. 2012); *see also Brown v. People*, 56 V.I. 695, 698 (V.I. 2012). Therefore, we have jurisdiction over this appeal.

## III. DISCUSSION

Benjamin argues that this Court should reverse the Superior Court's March 14, 2012 Judgment and Commitment because the court erred in recalling the jury after declaring a mistrial and discharging the jury. According to Benjamin, the Superior Court "exceeded its dominion by recalling a jury it had already dismissed." (Appellant's Br. 15.) Once the jury had been discharged and had left the courtroom, Benjamin asserts, the court could not then reassemble the jury to seek clarification on the verdict. Benjamin also argues that the jury was not under the continuous control of the court due to the length of the sidebar following the discharge of the jury, and jurors were "most likely dispersed and/or congregated between the court room and the hallway outside the courtroom." (Appellant's Br. 13, 15.) And therefore, he asserts, we must reverse his conviction.[4] We disagree.

In its brief to this Court, the People cite a number of federal cases holding that a court does not commit procedural error under the Federal Rules of Criminal Procedure in recalling a jury to amend an erroneously entered mistrial order. Although Federal Rule of Criminal Procedure 26.3 governs mistrials in federal courts, 5 V.I.C. § 3633 provides the procedure for declaring a mistrial and discharging the jury in the Superior Court of the Virgin Islands. *Najawicz v. People*, 58 V.I. 315, 328 (V.I. 2013) (noting that Rule 26.3 does not apply in the Superior Court through Superior Court Rule 7 because it is inconsistent with section 3633). Section 3633 provides that the court may "discharge a jury without prejudice to the prosecution in case of accident or calamity, or because there is no probability of the jurors agreeing." 5 V.I.C. § 3633. Whether section 3633, or any other Virgin Islands statute or court rule, prevents the recall of a jury after it is declared discharged is a question of law subject

---

filed on the date of and after the entry of judgment." Therefore, even though Benjamin filed his notice of appeal before the Superior Court's Judgment and Commitment was entered into the docket, it is timely.

[4] Although Benjamin initially raised two hearsay issues on appeal, they were withdrawn at oral argument.

to plenary review by this Court. *Billu v. People*, 57 V.I. 455, 461 (V.I. 2012) (citing *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009)).

 We first note that Benjamin has not identified any local statute or court rule that would prevent the Superior Court from recalling a jury after it is declared discharged. Additionally, title 5 does not define "discharge," or indicate when the Superior Court's discharge declaration becomes irrevocable, and nothing in the Superior Court Rules speak to this issue. Black's Law Dictionary defines "discharge" as "[a]ny method by which a legal duty is extinguished." BLACK'S LAW DICTIONARY 530 (9th ed. 2009). And despite the lack of Virgin Islands authority addressing when a jury's "legal duty is extinguished" after it is declared discharged, a substantial majority of courts from other jurisdictions that have ruled on this question endorse the proposition that

> there is no magic in the word ["discharge"], and . . . a discharge of the jury may be effected without formal pronouncement of the court. A discharge will occur in fact when a jury is permitted to pass from the sterility of the court's control and allowed to separate or disperse and mingle with outsiders. . . . On the other hand, a trial judge's verbal discharge of the jury after receiving their verdict in a criminal case, does not preclude a later correction of the verdict to conform to the actual finding where the jury has not separated or dispersed, but has remained sequestered and insulated from any outside influence and the correction is not one of substance resulting from further deliberation on the merits of the cause.

*State v. Edwards*, 15 Wn. App. 848, 552 P.2d 1095, 1097 (Wash. Ct. App. 1976). Many of these jurisdictions "are in accord with th[e] principle" that the "verbal discharge or dismissal of the jury by the trial court does not render the jury discharged for purposes of subsequent reassembly to correct or amend a verdict." *State v. Green*, 995 S.W.2d 591, 609-14 (Tenn. Crim. App. 1998) (reversing conviction entered after jury reassembly where jurors "had indeed been discharged" after leaving the courtroom and entering a public area of the courthouse) (acknowledging contrary authority and collecting cases). This subsequent reassembly is appropriate where the jurors remain "an undispersed unit within the control of the court," with no opportunity to interact with members of the general public. *State v. Colon*, 272 Conn. 106, 864 A.2d 666, 776 (Conn. 2004); *see also Commonwealth v. Brown*, 367 Mass. 24, 323 N.E.2d 902, 904 (Mass. 1975) (allowing the re-

577

call of a jury where there was no opportunity for "commingling of the jurors with any members of the general public"); *State v. Rodriguez*, 139 N.M. 450, 134 P.3d 737, 739 (2006) ("[D]etermining whether a jury has been discharged requires a determination of whether the jury is still in the presence and control of the trial court, and if not, whether the jury was possibly influenced by an unauthorized contact.").

■ And, although the federal rules do not apply in this instance, it is worth noting that federal courts follow an almost identical analysis. *See, e.g., United States v. Rojas*, 617 F.3d 669, 677 (2d Cir. 2010). Like the state courts cited above, federal courts look to whether "the jury remain[ed] an undispersed unit, within control of the court" in determining whether a recall is appropriate after a discharge declaration. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998). Where the jury remains within the court's control as an undispersed unit, "with no opportunity to mingle with or discuss the case with others," federal appellate courts have affirmed the recall of a jury to return a verdict that was erroneously withheld or incorrectly reported. *Rojas*, 617 F.3d at 677 (quoting *Summers v. United States*, 11 F.2d 583, 586 (4th Cir. 1926)); *see also United States v. Marinari*, 32 F.3d 1209, 1214 (7th Cir. 1994) ("Until the jury is actually discharged by separating or dispersing[, ]not merely being declared discharged[], the verdict remains subject to review."); *see generally United States v. Figueroa*, 683 F.3d 69, 73 (3d Cir. 2012) ("When a jury remains as an undispersed unit within the control of the court and with no opportunity to mingle with or discuss the case with others, it is undischarged and may be recalled."); *Gov't of the V.I. v. Smith*, 558 F.2d 691, 693 (3d Cir. 1977) (recognizing that courts have begun to adopt a more "pragmatic approach" to the question of whether a jury can be recalled after declared discharged).

■ "In cases of this type, the pivotal question is whether the trial court lost control of the jury, *i.e.*, whether the protective shield which must surround a jury was removed, allowing the jurors to be influenced by improper outside factors." *People v. McNeeley*, 216 Ill. App. 3d 647, 575 N.E.2d 926, 929, 159 Ill. Dec. 119 (1991). In Benjamin's case, the jurors did not leave the "protective shield" of the court — and their legal duties were not yet extinguished — as they had not dispersed and were not exposed to outside factors before being recalled. Before being declared discharged, the jury reached a verdict on seven of the counts against Benjamin, acquitting him of the first-degree murder and attempted

murder charges, finding him guilty of reckless endangerment and unauthorized possession of a firearm, and failing to reach a verdict on second-degree murder and four counts of third-degree assault. Because of a miscommunication with the jury foreperson, the court was under the mistaken impression that the jurors were deadlocked on all charges, prompting a mistrial. This presents a situation very similar to that in *Rojas*, where the court misread the verdict form and declared the jury discharged. 617 F.3d at 673. The Second Circuit held that the pre-discharge written verdict was the "operative verdict" and remained "a wholly reliable indicator of the jury's true verdict" once the jurors had affirmed it through a jury poll, so long as the jurors remained within the control of the court and segregated from " 'outside factors' " before their recall. *Id.* at 677-78 (quoting *Marinari*, 32 F.3d at 1213).

Benjamin argues that due to the length of the sidebar following the discharge declaration, the court lost control of the jury and suggests that the jurors became susceptible to outside influences because they "most likely dispersed outside the courtroom." (Appellant's Br. 13.) Although neither the trial transcript nor the record of proceedings indicate exactly how much time elapsed from the discharge declaration to the recall, a close reading of the transcript reveals that it could not have been longer than a few minutes, as after the discharge declaration, the People immediately moved the court to recall the jurors, and the entire affair from the first discharge declaration to the final discharge — including the sidebar, recall, verdict, and jury poll — took place within a brief ten minute window. During this brief period between the discharge declaration and the recall, the jurors either remained in the courtroom or had begun to enter the deliberation room.[5] Additionally, despite Benjamin's conjecture that the jurors were exposed to prejudicial outside

---

[5] Before the court recalled the jurors, the People indicated for the record — without objection — that "[the jurors] are still within the Court's jurisdiction. They are still in the room, and the record should reflect that they haven't left the courtroom or even left the jury deliberation room." (J.A. 144.) We note that the Superior Court could have taken a number of steps to preserve the record on appeal, but did not. The court did not make findings of fact regarding the whereabouts of jurors after they left the jury box or whether they were subject to outside influences. Confronted with a similar situation, the New Mexico Supreme Court explained that

> the trial judge or either party could have made a more specific statement that the jurors, while leaving the jury box . . . , alerted the court that a verdict had been incorrectly reported. Or, the trial judge or either party could have made a more specific statement

influences following the discharge declaration, nothing in the record supports this assertion, and given the manner in which events unfolded, it is clear that the jurors remained within the "protective shield" of the court — leaving their legal duties intact. *See McNeeley*, 575 N.E.2d at 929 (affirming the trial court's holding that the jurors were still within the court's "protective shield" where the defendant presented no evidence of outside influence between discharge and recall).[6]

---

that no juror had left the courtroom, jury room, or entered an area occupied by the general public. More specific statements would have made clear that the jury room was immediately adjacent to the courtroom and that the jurors were not entering the spectator section of the courtroom, and any disagreement by the parties could have been recorded. Alternatively, each juror could have been asked on the record whether he or she had left the courtroom or entered an area occupied by members of the general public and, if so, whether the juror or any member of the general public commented about the jury verdict.

*Rodriguez*, 134 P.3d at 741; *see also Brown*, 323 N.E.2d at 904 (noting that the trial court took the testimony of two court officers and the clerk regarding the location of jurors after trial); *Edwards*, 552 P.2d at 1096-97 (noting that the trial court held an evidentiary hearing after trial in which the bailiff testified to the location of the jurors between discharge and recall). Such a failure can constitute grounds for a remand for findings of fact. *Dennie v. Swanston*, 51 V.I. 163, 168 n.1 (V.I. 2009) (a trial court's failure to provide sufficient findings of fact on the record frustrates appellate review and "in many cases . . . require[s] a remand"); *see also Wessinger v. Wessinger*, 56 V.I. 481, 488 (V.I. 2012) ("Appellate courts generally remand cases where the trial court failed to explain its reasoning."). While the Superior Court should make such findings in the record before allowing a recalled jury to return a verdict, a remand is not necessary here because the record reflects that the jurors had not left the courtroom or deliberation room following the discharge declaration.

[6] Although Benjamin cites a number of cases where recalling a jury constituted reversible error, these cases are easily distinguished on their facts. For example, Benjamin relies on *Ex parte Lamb*, 113 So. 3d 686 (Ala. 2011), in which the Supreme Court of Alabama held that it was error to recall a jury to correct a verdict because the jurors had "place[d] themselves beyond the *immediate, continuous control of the court*," 113 So. 3d at 690 (emphasis in original) (quoting *Hayes v. State*, 214 So. 2d 708, 710 (Ala. 1968)). The Alabama court noted that the "jury was outside the courtroom and outside the presence and supervision of any officer of the court for a few minutes," and five jurors could not be located at all. *Id*. at 691; *see also Hayes*, 214 So. 2d at 710 (finding reversible error where it took fifteen minutes to locate all the jurors who had dispersed throughout the courthouse); *Spears v. Mills*, 347 Ark. 932, 69 S.W.3d 407, 410-14 (Ark. 2002) (reversing in a civil case where the jury was discharged and then recalled to resume deliberations). These cases are clearly distinguishable from the circumstances of Benjamin's trial, where the jurors remained within the control of the court, remained under the supervision of court personnel, and had not dispersed or been subject to outside influences. During oral arguments, Benjamin also cited *People v. Rushin*, 37 Mich. App. 391, 194 N.W.2d 718, 719 (Mich. Ct. App. 1971). There, the Michigan court held that "[o]nce the jury has been officially discharged and left the courtroom, we hold that

Despite this, Benjamin urges this Court to presume that he was prejudiced by the recall of the jury. But in the cases where prejudice has been presumed, it was not merely because the jury was recalled, but because jurors had left the court's "protective shield" and had the opportunity to interact with members of the public before being recalled. *See, e.g., Edwards*, 552 P.2d at 1096 ("[C]ontamination is presumed even though the jurors may not have taken advantage of the opportunity to discuss the case."); *Rodriguez*, 134 P.3d at 740 ("we think it is reasonable to presume prejudice once a juror has left the presence and control of the court into an area occupied by the general public"); *Rojas*, 617 F.3d at 679 n.5 (finding no prejudice where the jury had no possible outside influence before recall). Even if we were to decide to follow this line of cases and presume prejudice where jurors have the opportunity to interact with members of the public before recall — a question we do not reach — no such opportunity occurred here.

Further, the only prejudice apparent here is that which Benjamin would suffer if we reversed the jury's verdict and remanded for a new trial. After being recalled, the jury returned a verdict of not guilty on first-degree murder, preventing his retrial for this crime. Were this Court to agree with Benjamin's appellate counsel and invalidate the jury's verdict — or had the Superior Court agreed with Benjamin's trial counsel and refused to recall the jurors — Benjamin would be subject to retrial for first-degree murder, and the possibility of a mandatory life sentence without parole. Accordingly, we affirm Benjamin's convictions, as the Superior Court did not err — nor was Benjamin prejudiced — by recalling the jury to return the mistakenly withheld verdict.

## IV. CONCLUSION

█ The Superior Court did not err in recalling the jury after declaring it discharged under the specific circumstances of this case. The discharge declaration had not yet taken effect because the jurors remained within the

---

it is error to recall it in order to alter, amend or impeach a verdict in a criminal case." *Id.* at 721. But the issue addressed in *Rushin* is one which is not before us here — "[w]hether a jury may be recalled, in a criminal case, after it has been discharged and left the courtroom, in order to amend or alter its verdict." *Id.* at 719. The jury at Benjamin's trial did not return a verdict before it was declared discharged, and its recall did not "amend or alter its verdict," instead, the jury was recalled to return — in the first instance — the verdict reached before it was declared discharged that was mistakenly withheld from the Superior Court.

"protective shield" of the court — leaving their legal duties intact — and Benjamin was not prejudiced, as the jurors had no opportunity to interact with members of the public before being recalled. Therefore, we affirm the Superior Court's March 14, 2012 Judgment and Commitment.