Robert SPEARS and Barbara Spears *v.*
John MILLS and Carol Mills

01–887                              69 S.W.3d 407

Supreme Court of Arkansas
Opinion delivered March 14, 2002

*Benson, Robinson & Wood*, by: *Joe Benson* and *Brian D. Wood*, for appellants.

*Greenhaw & Greenhaw*, by: *John Greenhaw*, for appellees.

DONALD L. CORBIN, Justice. This appeal presents an issue of first impression: Whether a trial court has authority to reconvene a jury to be polled and to deliberate further on its verdict once the jury has been discharged and has left the courtroom. Appellants Robert and Barbara Spears argue that the Washington County Circuit Court exceeded its authority in this case by allowing the jury to reconvene and produce a verdict that contradicted its initial verdict. They argue further that the trial court erred in granting a mistrial on the issue of damages and ordering a new trial on that issue. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1–2(b)(1). We agree with Appellants, and we reverse the trial court's judgment and remand for entry of the first jury verdict.

The record reflects that Appellees John and Carol Mills filed a complaint in the circuit court against Appellants, alleging that Appellants violated a warranty of habitability in the initial construction and subsequent repairs to the house that Appellees purchased from Appellants. Appellants responded by asserting that the suit was barred by the five-year statute of limitation, as they contended that the house was substantially completed on September 13, 1995, but the complaint was not filed until September 20, 2000. Appellants also asserted that the repairs completed in May 1996, remedied the situation.

The case was tried to a jury in February 2001. At the conclusion of the evidence, the jury was initially instructed to complete four interrogatories on liability. The first two asked the jury whether Appellants had breached a warranty of habitability in the sale of the house and in the roof repairs done in 1996. Both interrogatories were answered affirmatively. The third interrogatory asked whether Appellees were at fault in causing the damage to their house. The jury answered "No." The fourth interrogatory asked the jury to determine the date that the house was substantially completed. The jury answered "9/13/95." Based on the jury's answer to the fourth interrogatory, the trial court concluded that any claim regarding the initial construction was barred by the statute of limitations. Accordingly, the jury was only submitted one damage interrogatory, asking the amount of damages sustained as a result of the repairs done in 1996. The jury answered "0."

Once the jury's verdict had been read, the trial court asked the parties if they had any questions and if they wished to have the jury polled. Both parties indicated that they had no questions and that they had no desire to have the jurors polled. Thereafter, the jury was discharged, and the individual jurors left the courtroom. Minutes later, while the trial court was discussing the issue of attorney's fees, the bailiff notified the court that the jury was back in the jury room. The jury foreman had informed the bailiff that the jurors felt that they may have misunderstood the interrogatory pertaining to damages. Based on this information, the trial court had the jurors brought back into the jury box. Appellants' attorney objected to any reconvening of the jury because a final verdict had been rendered and the jury had been discharged. Over Appellants' objection, the following discussion occurred between the court and the jury foreman:

THE COURT: Welcome back. Mr. Foreman?

MR. TRIPP: Yes, Your Honor.

THE COURT: I'm going to ask a couple of questions and I'm going to do what I think that the lawyers have agreed and I want to talk to them about this in a minute. This is kind of unusual to say goodbye to a jury and have them start down the stairs and then have you get about half way down and then decide that you want to come back. So, we're on water that I'm not sure is easily charted for me, but we're going to try to, in the end, do what's fair to everybody. In order to start that I think I need to ask you, Mr. Foreman, why don't you stand up please? I have been given notification by my bailiff that you, on behalf of the jury, and for the jury informed him that there may have been some question about the last interrogatory that you answered.

MR. TRIPP: Yes, Your Honor.

THE COURT: Okay. And so I've held you in the courthouse. Have any of you left the courthouse?

MR. TRIPP: No, Your Honor.

THE COURT: Okay. Have any of you talked to anybody else in the world, other than the members of the jury?

MR. TRIPP: Just among ourselves.

THE COURT: Okay. The law allows me to ask each one of you if this verdict, which we just signed, is your verdict and I can't, at this time, explain all the reasons why there are rules why we do certain things certain ways in the law but the only verdict that seems to be in question is this last one, Interrogatory Number Seven, "State the amount of damages you find Plaintiff sustained as a result of repairs done in 1996" and the answer on this one is "Zero," signed by Charles Tripp, foreman. At this time, I'm going to do what's called poll the jury and this is a procedure that's prescribed by law. And I'm going to have each one of you, starting at the back left-hand corner stand, state your name and then tell me if this is your verdict.

Thereafter, each juror was polled. Ten of the twelve jurors stated that the verdict that was read earlier in open court was not their verdict.

At that point, the trial court sent the jury out of the room and sought guidance from the attorneys as to how to proceed. Again, Appellants' attorney objected to any further action by the jury. He contended that once the verdict had been read and the jury had been discharged, the case was over and the verdict was final. He asserted that Appellees had waived their right to poll the individual jurors by failing to request a poll before the jury was discharged.

Appellees' attorney argued that although the jury had technically been discharged, the jurors had almost immediately reconvened themselves into the jury room and had not discussed the matter with anyone else. He argued that it was a matter of fundamental fairness to permit the jury to deliberate further, given that ten of the twelve jurors had just indicated that the verdict read in court was not theirs.

The trial court initially took a recess to allow both counsel the opportunity to research the issue. Thereafter, the trial court went back on the record and announced its intention to allow the jury to deliberate on a new verdict. The trial court reassured the parties that they would have an opportunity to argue the law at a later time. The jury returned a new verdict, awarding Appellees damages in the amount of $5,900. The trial court accepted the verdict, but instructed counsel for both sides to submit briefs on the issue.

The trial court entered a final order on March 26, 2001. In that order, the trial court concluded that it had the authority to recall the jury for the purpose of polling the jurors and, if appropriate, to allow them to deliberate further. The trial court acknowledged the general rule that once a jury has been discharged, the verdict is final and the case has ended. However, the court concluded that Arkansas law would recognize an exception in this case, where the error was made known within minutes after discharge and the jurors had not mingled with bystanders or discussed the case with anyone else. Notwithstanding these conclusions, the trial court refused to enter the second verdict on the ground that it was different in substance, not just form, and, in fact, impeached the first verdict. The trial court reasoned that it would be inappropriate to impose the second verdict under the circumstances. Accordingly, the court declared a mistrial and granted a new trial on the issue of damages sustained from the 1996 repairs.

Appellants raise two points for reversal. For their first point, they argue that it was error to allow the jury to reconvene and deliberate after it had rendered a verdict and had been discharged

from the case and dispersed from the courtroom. They rely on Ark. Code Ann. § 16-64-119 (1987), which provides in pertinent part:

> (b) When the verdict is announced either party may require the jury to be polled, which is done by the clerk or court asking each juror if it is his verdict. If any one answers in the negative, the jury must again be sent out for further deliberation.

> (c) The verdict shall be written, signed by the foreman, and read by the court or clerk to the jury, and the inquiry made whether it is their verdict.

> (d)(1) If any juror disagrees, the jury must be sent out again.

> (2) *If no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case.* [Emphasis added.]

Appellants also rely on this court's cases holding that the time to object to an irregularity or inconsistency in a verdict is prior to the discharge of the jury. *See, e.g., P.A.M. Transp., Inc. v. Ark. Blue Cross & Blue Shield,* 315 Ark. 234, 868 S.W.2d 33 (1993); *Wal-Mart Stores, Inc. v. Kelton,* 305 Ark. 173, 806 S.W.2d 373 (1991). Similarly, the time to correct or clarify a verdict based on the jury's misunderstanding of the instructions is before the jury is discharged. *Center v. Johnson,* 295 Ark. 522, 750 S.W.2d 396 (1988). The failure to object to a verdict irregularity prior to the discharge of the jury constitutes a waiver of that irregularity. *Id.; Coran v. Keller,* 295 Ark. 308, 748 S.W.2d 349 (1988).

Appellees, on the other hand, urge this court to uphold the trial court's determination that the decisions in *Levells v. State,* 32 Ark. 585 (1877), and *Barnum v. State,* 268 Ark. 141, 594 S.W.2d 229 (1980), would allow the trial court some leeway to reconvene the jury following discharge when an issue arises concerning the validity of the verdict. We disagree. While there is language in those holdings that conceivably could be construed to grant the trial court some discretion in correcting a verdict after the jury has been discharged, the reality is that in both of those cases, the irregularities in the verdict were noticed before the jury had even stepped out of the jury box.

In *Levells,* 32 Ark. 585, the jury had returned a verdict of guilty for only one of two criminal charges. The trial court read the verdict and then discharged the jury. As the jurors were exiting the

jury box, the trial court called them back and told them that the verdict was defective. Thereafter, the trial court sent the jurors out to deliberate further. This court affirmed the trial court's action, concluding that the jury had not been truly discharged. This court pointed to the fact that the jurors remained in the presence of the court and had not "mingled with the by-standers." *Id.* at 591. This court reasoned:

> The authorities say, that after the verdict has been received and the jury discharged, their control over the verdict is at an end, and they cannot be recalled to alter or amend it.
>
> But what is a discharge? Clearly, it would seem to us that, *if they have not separated, and as a body, are still in the presence of the court,* the order discharging is *in fieri,* and yet in the breast of the court, and may be recalled. To correct a mistake when no prejudice can result from it, is not only proper, but the duty of the court.

*Id.* (citations omitted) (emphasis added).

In *Barnum,* 268 Ark. 141, 594 S.W.2d 229, the jury had not been discharged at all. There, the trial court was handed the jury's verdict and promptly stated that the verdict seemed ambiguous and unclear. The court then sent the jury to deliberate further. This court upheld the trial court's action, on the ground that "the jury have full power over their verdict, and may amend it, or recede from it, at any time before it has been received and recorded, and themselves have been discharged from the case." *Id.* at 144, 594 S.W.2d at 231 (quoting *Gilchrist v. State,* 100 Ark. 330, 340, 140 S.W. 260, 264 (1911)). This court explained further:

> Over 75 years ago, we said that it was no longer questioned that a jury may amend its verdict to conform to its finding and to put it in proper form at any time before they have separated and before the verdict has been entered of record and the jury discharged. *Hamer v. State,* 104 Ark. 606, 150 S.W. 142 [(1912)]. Even after a jury had been discharged, but before the jurors had dispersed, or mingled with bystanders at the trial, a recall of the jurors and a direction to them to retire and amend a defective verdict, over the objection of the accused, was held to be proper performance of the duty of the trial judge. *Levells v. State,* 32 Ark. 585 [(1877)].

*Id.* at 144-45, 594 S.W.2d at 231. This holding does not support the trial court's conclusion that a trial court has discretion to reconvene the jury for further deliberation once the jury has been discharged

and dispersed from the courtroom. *Barnum* merely holds that the jury may amend its verdict to reflect its true intention so long as the jury has not been discharged and the verdict has not been received and recorded.

■ Contrary to Appellees' argument, a review of this court's cases on the subject demonstrates that it has only permitted the jury to correct or amend its verdict prior to the time it is discharged. *Levells* is the sole exception. Even there, however, the jurors were still in the presence of the court as a body. The *Levells* court emphasized the fact that at the time the error was discovered, the jury, as a body, had not left the presence of the trial court and mingled with bystanders. We do not read *Levells* so literally to hold that mingling with bystanders only occurs if the jurors have actually discussed the case with other persons. Rather, mingling occurs once the individual jurors have been discharged from their oath and duties as jurors and have left the presence, control, and supervision of the court. Thus, the only exception carved out by this court is where the jury has not yet split up as a body and is still in the presence and control of the court.

■ The holding in *Clift v. Jordan*, 207 Ark. 66, 178 S.W.2d 1009 (1944), upon which Appellants rely, is instructive. There, the jury rendered a verdict that appeared to be inconsistent with the damages sought by the plaintiffs. While the jury was still impaneled, the trial court asked if the jury had misunderstood the instructions. One juror answered "Yes." *Id.* at 69, 178 S.W.2d at 1010. The trial court then sent the jury out to deliberate further. This court affirmed the trial court's actions, holding:

> The verdicts of a jury should in any and all cases reflect the true and correct and final conclusions of the jury, and *if before discharging the jury* it was made known to the court that the jury had misunderstood the instructions, no error is committed in permitting the jury to further consider their verdict, after the instructions have been explained.

*Id.* at 69-70, 178 S.W.2d at 1011 (citation omitted) (emphasis added). This holding demonstrates this court's awareness of the conflicting interests at stake when a verdict does not reflect the true intention of the jury. On the one hand, there is the interest of the parties, as well as society in general, in having a verdict that is a true reflection of the jury's intention. On the other hand, there is the need for finality and for measures that ensure the sanctity of the jury

and its deliberations. By requiring that any corrections or amendments be completed prior to the jury's discharge, this court made it clear that the paramount consideration is that the jury be free from even the appearance of taint or outside influences.

Similarly, in *Center*, 295 Ark. 522, 750 S.W.2d 396, this court held that "[t]he time to correct or clarify a verdict is before the jury is discharged." *Id.* at 525, 750 S.W.2d at 398 (citing *Barham v. Rupert Crafton Comm'n Co.*, 290 Ark. 211, 718 S.W.2d 432 (1986)). Citing to the prior decision in *Clift*, this court reinforced the notion that while a jury verdict should in all cases reflect the actual final conclusion of the jury on the matter being tried before them, any error resulting from the verdict because the jury misunderstood the instructions may only be corrected if done before the jury is discharged. "However, *if before the jury is discharged* it is made known to the court that the jury misunderstood the instructions, it is not error for the court to permit the jury to further consider their verdict, after the instructions are again read to them." *Id.* (emphasis added).

Here, the jurors were presented with an interrogatory asking them to state the amount of damages sustained by Appellees as a result of the repairs done in 1996. After deliberating, the jury returned with a verdict of zero damages. Both parties indicated that they had no questions about the verdict and that they did not wish to have the jury polled. The jury was then discharged, and the jurors left the courtroom. Thereafter, the jury foreman informed the court that the jury may have misunderstood the instruction on damages. Based on this information, the trial court recalled the jury, polled each juror, and then sent them to deliberate further based on the result of the poll. This was error.

The foregoing cases demonstrate that the time to correct a verdict based upon a claim that the jury misunderstood the instructions is prior to the jury's discharge. The jury has full power over its verdict and may amend it or recede from it at any time before the verdict has been received and recorded and before the jury has been discharged. Once the jury has been discharged and has left the presence of the court, it is without power to correct or amend its verdict. Here, the verdict was received and recorded, and the jury was discharged from the case before the claim was made that the jurors may have misunderstood the instruction. Accordingly, it was error for the trial court to reconvene the jury for the purpose of correcting any mistake in the verdict.

To date, this court has not strayed from its earlier holdings, which only permit a verdict to be corrected *prior* to the jury's discharge. The reason for this strict or absolute rule is to avoid even the appearance of any possible taint to the jury's verdict. Thus, even though the trial court here found that the individual jurors had not discussed the matter with anyone other than fellow jurors, the fact that the jurors had been discharged and had left the presence and control of the court gives at least the appearance that they may have been influenced by outside pressures. Indeed, the trial court acknowledged this appearance of impropriety when it refused to impose the jury's second verdict.

In sum, neither section 16-64-119 nor this court's long-standing precedent permit the trial court to recall the jury after discharge and poll the individual jurors based on a claim that the jury misunderstood the instructions. Nor does Arkansas law allow the jury to correct or amend its verdict once it has been discharged from the case and left the presence and control of the court. Accordingly, we reverse the trial court's judgment, and we remand with instruction to reinstate the jury's first verdict, which awarded zero damages to Appellees. Because we reverse and remand on this issue, it is not necessary to address the second point on appeal.