# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1650

_____

Teresa R. Wagner

*Plaintiff - Appellant*

v.

Carolyn Jones, Dean Iowa College of Law (in her official and individual capacities); Gail B Agrawal, Dean Iowa College of Law (in her official and individual capacities)

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: February 13, 2014
Filed: July 15, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Teresa Wagner appeals from the district court's denial of her motion for new trial, arguing that significant errors in the verdict formulation process entitle her to a new trial. Under the standard we apply today, we conclude that the district court

abused its discretion in denying Wagner's motion. Accordingly, we reverse and remand for a new trial.

## I. BACKGROUND

This case returns to us for the second time following reversal and remand of the district court's initial summary judgment ruling. See Wagner v. Jones, 664 F.3d 259, 275 (8th Cir. 2011) (remanding for "further proceedings" consistent with the court's opinion). The facts pertinent to the instant appeal are set forth below.

On January 20, 2009, Wagner commenced action against Carolyn Jones, then Dean of the Iowa College of Law (the "College of Law") in her individual capacity. She alleged claims associated with her candidacy as a legal writing instructor at the College.[1] Wagner subsequently amended her complaint, seeking injunctive relief in the form of employment from the current College of Law Dean, Gail B. Agrawal, in her official capacity. On October 15, 2012, pursuant to 42 U.S.C. § 1983, Wagner's trial commenced in Davenport, Iowa, on two constitutional claims–political discrimination and equal protection.

On October 22, 2012, the jury began deliberations. Deliberations continued on October 23, with a magistrate judge presiding over the deliberations by consent

---

[1]The record establishes that although the College of Law uses a multifaceted process for receiving advice and consent from relevantly involved faculty and staff, especially in the selection of new members of the teaching faculty, the Dean has final authority and responsibility for the exercise of the College's employment actions. In this case, Dean Jones acted in her individual capacity as a supervisor. Under such circumstances, a supervisor may incur liability under 42 U.S.C. § 1983 for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. Ottman v. City of Independence, Mo., 341 F.3d 751, 761 (8th Cir. 2003).

of the parties.[2] At 9:00 a.m., on October 24, the jury sent the magistrate judge a note, inquiring, "What happens if we cannot come to an agreement?" After the magistrate judge conferred with the parties and, by telephone, with the district judge, the magistrate judge directed the jury to continue with deliberations in an attempt to arrive at a unanimous verdict.

Roughly two hours after submitting their first question, the jury sent the magistrate judge another note, signed by all twelve jurors, stating, "We are unable to come to a unanimous verdict for either the Plaintiff, Teresa Wagner, nor Defendant, Carolyn Jones." Subsequently, the district court held a telephone conference with the magistrate judge and the parties, discussing how to proceed. During this discussion, the district court recognized that "we don't know if [the note] pertains to one of the submitted counts or both of the submitted counts," but the court clearly operated at that time under the assumption that both counts were at issue in the jury notes.[3] At this point, the district court asked the parties whether they thought it appropriate to give the jury a so-called Allen[4] charge. Wagner desired such a charge, but the appellees objected to giving the instruction.

Pursuant to the district court's instructions, a little after 1:00 p.m., the magistrate judge convened the jury in open court and read them the Allen charge. At

---

[2]The district court judge conducting the trial had returned to his chambers in Des Moines, Iowa.

[3]Indeed, the court's jury instructions clearly directed the jury to evaluate the issues and return a separate verdict on each count submitted for deliberations, without further instructions from the court.

[4]Allen v. United States, 164 U.S. 492 (1896). "An Allen-charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Walrath, 324 F.3d 966, 970 (8th Cir. 2003) (quotation omitted).

3:24 p.m., through email, Wagner's counsel requested that the district court discharge the jury and order a new trial. A short time after 4:00 p.m., the jury sent the court another note, indicating that the jury could not reach a unanimous verdict and predicting, "I DO NOT SEE US EVER AGREEING." After receiving this note, the magistrate judge again convened the jury in open court without counsel present. The magistrate judge questioned the jury about the note, and each juror confirmed that the note reflected his or her individual view as to the state of deliberations. The magistrate judge, then, declared a mistrial, asked the jury to later complete and return a post-trial assessment, and thanked the jury for their service. The magistrate judge finally excused the jury and the members retired from the courtroom at 4:35 p.m. according to the clerk of court's minutes.

Then, after having discharged the jury, the magistrate judge reassembled the previously dispersed members in the courtroom.[5] According to the clerk of court's minutes, this occurred at 4:37 p.m. The magistrate judge, out of the presence of the parties and their lawyers, then engaged in the following colloquy with the jury:

> What I failed to ask you for on the record was there were two counts in the Complaint filed by Ms. Wagner against the Defendants and the indication of the jury was that you were unable to reach an agreement. Was that as to both Counts 1 and 2?

The foreperson replied that the jury had reached a verdict on Count I, but not Count II. Specifically, the foreperson indicated that the jury had found for defendant Jones

---

[5]From the time the magistrate judge discharged the jury and the members dispersed from the courtroom, until the time the magistrate judge reassembled them in the courtroom, we have no record of the jury members' location, supervision, contacts, communications or conduct, either as individuals or as a group.

on Count I.[6]  The magistrate judge polled each juror, and the jurors confirmed the verdict on Count I.  After this, the magistrate judge amended the previous mistrial ruling, now limiting it to Count II, and ordered the foreperson to sign the verdict form and again excused the jury.  On October 25, 2012, the clerk entered judgment on the verdict on Count I in favor of Jones and noted that the court declared a mistrial on Count II.

On November 1, 2012, the appellees moved for judgment as a matter of law on Count II–the equal protection claim.  On November 20, 2012, Wagner moved for a new trial on the basis that the magistrate judge lacked authority to reconvene the jury and accept a verdict after he had already declared a mistrial.  The district court granted the appellees' motion for judgment as a matter of law on Count II and denied Wagner's motion for new trial, among other rulings.  Wagner now appeals.[7]

## II.    DISCUSSION

Wagner raises many issues in this appeal.  However, we substantially limit our review to a single matter: whether the district court erred in denying her motion for new trial under Federal Rule of Civil Procedure 59(a) due to errors in the verdict process.[8]  "We review the denial of a motion for a new trial for a clear abuse of

---

[6]There is, however, information in the record tending to show that the jury's "I DO NOT SEE US EVER AGREEING" note to the magistrate judge prior to discharge and reassembly better described the then continuing status of jury deliberations on both counts.  See, e.g., Wagner v. Jones, No. 3:09-CV-10 (Response to Motion for Judgment as a Matter of Law, Ex. A, Nov. 19, 2012).

[7]In her reply brief, Wagner has abandoned her challenge to the district court's grant of judgment as a matter of law on Count II.

[8]Technically speaking, Wagner moved for a new trial under Rule 59(a).  Later, in a single document, Wagner moved to alter the judgment under Rule 59(e) and alternatively moved for relief from judgment under Rule 60(b)(4).  Wagner's Rule

discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013) (internal quotation omitted). Although our standard of review is deferential, "we may reverse a district court's denial of a Rule 59 motion where its judgment rests on an erroneous legal standard." Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). Indeed, the abuse of discretion standard "does not mean a mistake of law is beyond appellate correction." Koon v. United States, 518 U.S. 81, 100 (1996).

Wagner asserts that she is entitled to a new trial because the magistrate judge, after declaring a mistrial, had no legal authority to reconvene the jury and accept an unsigned verdict in favor of Jones on Count I. In ruling on Wagner's motion, the district court found legal authority for the magistrate judge's conduct in the "numerous federal courts that have held a jury remains 'undischarged' and subject to recall by the court under such circumstances."

Generally, with some factual distinctions, precedent falls within two camps on whether a jury may be recalled after discharge, especially a discharge such as we have in this case. One line of authority–followed by the district court here–requires a case-specific analysis of "whether the jurors became susceptible to outside influences" and beyond the control of the court once discharged. United States v. Figueroa, 683 F.3d 69, 73 (3d Cir. 2012). Many of the cases that adhere to this rule draw support from

---

59(e) motion was untimely, and she lodged the same basis for relief in her Rule 59(a) and 60(b)(4) motions. The district court evaluated whether Wagner's complaints were "cognizable under *any* rule." Rule 60(b)(4) provides a court authority to relieve a party from a final judgment that is void. "A judgment is void if the rendering court lacked jurisdiction or acted in a manner inconsistent with due process." Baldwin v. Credit Based Asset Servicing and Securitization, 516 F.3d 734, 737 (8th Cir. 2008). We therefore limit our review to Wagner's timely Rule 59(a) motion for new trial, which allows a district court to grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

Summers v. United States, where the Fourth Circuit observed that a jury "may remain undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others." 11 F.2d 583, 586 (4th Cir. 1926). Although the court in Summers determined that a nominally discharged jury that stayed in the courtroom remained undischarged for the purposes of correcting an error, see id. ("[t]hey remained in their seats"), a few courts have extended Summers to apply to situations where the court announces discharge and the jury retires to the deliberating room, see, e.g., Figueroa, 683 F.3d at 72; United States v. Rojas, 617 F.3d 669, 673 (2d Cir. 2010); United States v. Marinari, 32 F.3d 1209, 1215 (7th Cir. 1994). In those situations, even though discharged and outside the presence of the court, the jury remains subject to recall, the Third Circuit has reasoned, as long as "[t]he jurors did not disperse and interact with any outside individuals, ideas, or coverage of the proceedings." Figueroa, 683 F.3d at 73. Thus, according to this view, if a jury remains within the court-imposed "protective shield," it is subject to recall after discharge. People v. McNeeley, 575 N.E.2d 926, 929 (Ill. Ct. App. 1991).

The equally established competing view is that "[w]hen the court announces [the jury's] discharge, and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict." Melton v. Commonwealth, 111 S.E. 291, 294 (Va. 1922); see Nails v. S & R, Inc., 639 A.2d 660, 667 (Md. 1994) ("[I]n a civil case, after a jury has rendered an initial verdict, the trial judge ordinarily may ask the jury to amend, clarify or supplement the verdict in order to resolve an ambiguity, inconsistency, incompleteness, or similar problem with the initial verdict, up until the jury has been discharged and has left the courtroom."). Under this rule, if the jury

disperses from the courtroom, we presume "mingling occurs once the individual jurors have been discharged from their oath and duties as jurors and have left the presence, control, and supervision of the court." Spears v. Mills, 69 S.W.3d 407, 412 (Ark. 2002); see Mohan v. Exxon Corp., 704 A.2d 1348, 1352 (N.J. Sup. Ct. App. Div. 1998) ("We do not consider it of any moment that individual jurors may not have discussed the case with anyone or been subject to improper or any influences."). As Justice Cardozo long ago explained: "where [the jury] has been discharged altogether and relieved, by the instructions of the judge, of any duty to return . . . it has ceased to be a jury, and, if its members happen to come together again, they are there as individuals, and no longer as an organized group, an arm or agency of the law." Porret v. City of New York, 169 N.E. 280, 280 (N.Y. 1929).

Our circuit has not had the opportunity to address the issue of recalling a jury after a court has declared a mistrial and discharged the jury. Today, we hold, in a case such as the present one, where a court declares a mistrial and discharges the jury which then disperses from the confines of the courtroom, the jury can no longer render, reconsider, amend, or clarify a verdict on the mistried counts. In this age of instant individualized electronic communication and widespread personal control and management of pocket-sized wireless devices, we think this bright line rule is more faithful to precedent[9] and offers better guidance than an amorphous rule that turns on

---

[9]In this regard, we question whether some courts have improvidently extended Summers, because the precedent that Summers relied upon for its holding–like Summers itself–involved situations where a court nominally discharged the jury but corrected errors before the jury dispersed from the courtroom and the direct view of the trial judge. See Levells v. State, 32 Ark. 585, 1877 WL 1678, at *3 (Ark. 1877) ("[T]he jurors arose from their seats in the jury box, and began to pass out from the box . . . all in full view of the judge."); Brister v. State, 26 Ala. 107, 1855 WL 294,

whether jurors in fact became available for or were susceptible to outside influences or remained within total control of the court. Indeed, the Summers rule and its variations become unworkable when, as here, the record is silent as to juror security and conduct after discharge and leaves much to chance depending upon the nature of the architectural design of a courthouse and the availability of non-court personnel wandering the spaces outside the courtroom and its jury facilities. And, we are forced to speculate as to the undefined limits of the so-called "protective shield." Furthermore, once a court has declared a mistrial and discharged the jury from the courtroom, an attempt to reconvene the jurors, question them, and re-poll them on the mistried counts raises serious potential for confusion, unintended compulsion and, indeed, coercion.[10] We hesitate to give a vacillating juror an opportunity to

_____

at *6 (Ala. 1855) ("[T]he jury started out of the court-room, but had not got out of the bar."). Notably, this precedent remains in force, see, e.g., Spears, 69 S.W.3d at 411-12; Ex parte T.D.M, 117 So.3d 933, 938 (Ala. 2011), and is seemingly inconsistent with some cases purporting to apply Summers to situations where jurors dispersed beyond the courtroom. As Summers explained, we are concerned with whether a juror had the "opportunity" to encounter an outside influence, not whether the juror actually had such encounter. 11 F.2d at 586. In any meaningful sense, once a juror leaves direct judicial supervision in the courtroom, he or she virtually always has the "opportunity" to encounter outside influences. But there remains a marked difference between an admonished jury that disperses from the courtroom with a case still under consideration and one that disperses under the impression that the case is over and their duties complete. Mohan, 704 A.2d at 1352.

[10]On this point, given that the magistrate judge had declared a mistrial in addition to discharging the jury from the confines of the courtroom, we are not entirely convinced that those courts following the case-by-case, "outside influence" rule would condone recalling a jury to question and re-poll it on the already mistried counts. See Figueroa, 683 F.3d at 72-73 (allowing discharged jury to be recalled and consider new charge after court declared mistrial on different charge); Rojas, 617

-9-

reconsider, after he or she has already been polled and discharged, especially where there is the possibility that the jury, or some of its members, may have been confused in the understanding of the instructions. See ante at n.6; see also United States v. Schroeder, 433 F.2d 846, 851 (8th Cir. 1970) ("After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late.").

Applying the standard we adopt today, we conclude that the magistrate judge erred in recalling the jury to question and re-poll them as to the mistried, or not, counts. After declaring a mistrial, the magistrate judge thanked the jury for their service and explained to the jury that the "case will move on and we will either set another trial or it will be resolved in another way." Also, upon discharge, the magistrate judge provided the jurors with "letters" to complete and send back to the court as a post-trial assessment. The record does not indicate what inquiries or information the "letters" contained, but we do know that the magistrate judge informed the jury that "[i]f there's something about this case that we need to know about, this is your opportunity to tell us." At this point, the jury no longer operated under the admonition that it could not talk to others about the case outside of the

F.3d at 678 (allowing discharged jury to be recalled from deliberating room "to correct a technical error in the courtroom deputy's reading of the verdict form"); see also Camden v. Circuit Court of Second Judicial Circuit, Crawford Cnty., Ill., 892 F.2d 610, 616 n.7 (7th Cir. 1989) ("Once the jury is discharged and has dispersed, a trial court is unable to reconsider its intention to declare a mistrial."). Criminal cases, of course, present constitutional concerns not present here. See Camden, 892 F.2d at 616 n.7. But even in civil cases, both the litigants and the public must have the utmost confidence that verdicts remain untainted.

-10-

deliberation room. And, once discharged and dispersed from the courtroom, we are left, as earlier noted, to speculate as to the jurors' conduct.[11] Once reassembled in the courtroom, the magistrate judge reminded the jury that two counts were at issue and re-polled them as to Count I, but nothing indicates that the jury understood that the case was being placed back in their hands, and that they were being re-polled essentially to rescind the mistrial. Although it may have been an inadvertent mistake in failing to clarify the jury verdict before the mistrial was declared, the mistake was beyond correction after the jury left the courtroom. Therefore, in light of our holding, we conclude the district court applied an erroneous legal standard and, thus, abused its discretion in denying Wagner's motion for a new trial.

Finally, since we remand this case for retrial, we question whether the trial court's jury instructions adequately embraced our earlier guidance in adopting the First Circuit's test concerning First Amendment political discrimination claims. See Wagner, 664 F.3d at 270. There, we recognized that a discrimination plaintiff such as Wagner has "the threshold burden to produce sufficient direct or circumstantial evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action." Id. (quotation omitted). If Wagner produces such evidence at trial, as we felt she did for summary judgment purposes, the burden of persuasion then shifts to "Jones to show that she would have made the same hiring decisions regardless of Wagner's political affiliations and beliefs." Id. at 271. In other words, Wagner "will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish

---

[11]Although the district court offered the magistrate judge's personal account of the time interval between discharge and reconvening the jury, as the district court recognized, this is not part of the record.

-11-

that [the adverse action against Wagner] would have occurred in any event for nondiscriminatory reasons." Id. at 270. However, unlike other employment discrimination cases "where a plaintiff is required to come forward with affirmative evidence that the defendant's nondiscriminatory reason is pretextual," in this political discrimination case Wagner is not required to produce any evidence of pretext to prevail. Id. at 272 (quotation omitted). Indeed, while she "*may* discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor," id. (emphasis added), "her prima facie case may suffice for a factfinder to infer that the defendant's reason is pretextual," Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 78 (1st Cir. 2000). In this regard, we do not think the district court's Final Instructions Nos. 6 and 7 adequately address these principles and the attendant

shifting burden of persuasion. Accordingly, upon remand, we direct the district court to revisit these instructions.

## III.  CONCLUSION[12]

We reverse the district court's order denying Wagner a new trial on Count I, vacate the judgment on Count I, and remand for a new trial.

_____

_____

[12]The appellees argue that we lack appellate jurisdiction over this appeal to the extent it covers Wagner's claims against Dean Agrawal for prospective relief, because Wagner's notice of appeal did not list Agrawal as a named defendant or identify the district court's ruling with respect to Agrawal. Despite Agrawal's attempts to create one, we see no jurisdictional defect in Wagner's notice of appeal as to prospective relief. See Fed. R. App. P. 3(c)(1) (requiring notice of appeal to (1) "specify the party or parties taking the appeal"; (2) "designate the judgment, order, or part thereof being appealed"; and (3) "name the court to which the appeal is taken"); Hallquist v. United Home Loans, Inc., 715 F.3d 1040, 1044 (8th Cir. 2013) ("This court has jurisdiction over the underlying order if the appellant's intent to challenge it is clear, and the adverse party will suffer no prejudice if review is permitted.").